IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

CHRISTOPHER GAINFORTH,                :
                                       :
              Plaintiff,               :
                                       :
v.                                     :        Action No. 2:15-cv-205
                                       :
CAROLYN W. COLVIN,                     :
Acting Commissioner,                   :
Social Security Administration,        :
                                       :
              Defendant.               :

## REPORT AND RECOMMENDATION

Plaintiff Christopher Gainforth ("Mr. Gainforth") filed a complaint pursuant to 42 U.S.C.

§ 405(g) that seeks judicial review of the final decision of the Defendant, the Acting

Commissioner of the Social Security Administration ("Commissioner"), denying Mr. Gainforth's

claim for Disability Insurance Benefits pursuant to Title II of the Social Security Act.  Both

parties have filed motions for summary judgment, ECF Nos. 12 and 16, which are now ready for

recommended disposition.  This action was referred to the undersigned United States Magistrate

Judge ("the undersigned") pursuant to 28 U.S.C. §§ 636(b)(1)(B)-(C), Federal Rule of Civil

Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002 Standing

Order on Assignment of Certain Matters to United States Magistrate Judges.  After reviewing the

briefs, ECF Nos. 13 and 17, the undersigned makes this recommendation without a hearing

pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 7(J).  For the following

reasons, the undersigned **RECOMMENDS** that Mr. Gainforth's Motion for Summary

Judgment, ECF No. 12, be **DENIED**; the Commissioner's Motion for Summary Judgment, ECF

No. 16, be **GRANTED**; and the final decision of the Acting Commissioner be **AFFIRMED**, and that this matter be **DISMISSED WITH PREJUDICE**.

## I. PROCEDURAL BACKGROUND

Mr. Gainforth filed an application for disability and disability insurance benefits on July 22, 2011. R. 17, 159-71.[1] Mr. Gainforth alleged that his disability began on August 15, 2009, and his date last insured ("DLI") is December 31, 2011.[2] *Id.* at 159, 172-73. The Social Security Administration denied Mr. Gainforth's initial application on November 30, 2011 and again upon reconsideration on October 1, 2012. *Id.* at 114-19, 122-27. Mr. Gainforth then requested a hearing in front of an Administrative Law Judge ("ALJ") on January 31, 2013, which was held on November 20, 2013, and at which he was unrepresented by counsel. *Id.* at 27, 33. The ALJ subsequently denied Mr. Gainforth's application for disability insurance benefits on November 26, 2013. *Id.* at 25. Mr. Gainforth requested review of the ALJ's decision and, through retained counsel, proffered additional evidence to the Appeals Council for the Office of Disability and Adjudication ("Appeals Council"). The Appeals Council denied Mr. Gainforth's request for review of the ALJ's decision on March 17, 2015. *Id.* at 1-4. After exhausting his administrative remedies, Mr. Gainforth filed a civil action in this Court requesting judicial review of the Acting Commissioner's decision. ECF No. 3. The Acting Commissioner filed an answer to Mr. Gainforth's complaint on July 31, 2015. ECF No. 8. Both Mr. Gainforth and the Acting Commissioner have filed motions for summary judgment, ECF Nos. 12 and 16, and this Court is prepared to recommend disposition.

---

[1] "R." refers to the certified administrative record that was filed under seal on July 31, 2015, ECF No. 9, pursuant to Local Civil Rules 5(B) and 7(C)(1).

[2] A claimant is only eligible for disability insurance benefits if found to be disabled on or before his DLI. *See* 42 U.S.C. § 423; 20 C.F.R. § 404.130; *Johnson v. Barnhart*, 434 F.3d 650, 655-56 (4th Cir. 2005). Thus, to receive benefits, Mr. Gainforth must be found to have become disabled on or before December 31, 2011.

## II. RELEVANT FACTUAL BACKGROUND

In his application, dated October 7, 2011, Mr. Gainforth asserted a disability onset date of August 15, 2009. R. 159. At the time of the ALJ's decision, Mr. Gainforth was a thirty-year-old single male with a tenth-grade education. *Id.* at 22. Mr. Gainforth has past work experience as a car stereo installer and auto technician. *Id.* at 63-64. At the hearing held on November 20, 2013, Mr. Gainforth supplemented his medical records by providing additional information via testimony. *Id.* at 33-68. The record included the following factual background for the ALJ to review:

In 2004, Mr. Gainforth was diagnosed with multiple sclerosis ("MS") after reporting blurred vision in his left eye. *Id.* at 277. A positive MRI confirmed this, and it also suggested that Mr. Gainforth has multiple demyelinating lesions. *Id.* at 300. He was prescribed Avonex to try to combat these effects. *Id.* Mr. Gainforth also claims that he has "difficulty with coordination, decreased balance, problems with numbness and tingling in the arms and legs, restless legs syndrome at night, neurogenic bladder and positive dribbling." *Id.* at 277. Although Mr. Gainforth has not worked "on the books" since 2006; he testified that he had to stop doing "under the table" home improvement work due to pain and weakness in his legs that is caused by his MS. *Id.* at 42-43.

Mr. Gainforth did not need an assistive walking device on the date of the hearing, but Mr. Gainforth stated that he cannot stand at attention for more than thirty seconds without losing his balance, he cannot stand normally for more than an hour without having to sit down, and that his legs start to hurt after "walking around four sides of a block." *Id.* at 50-52. Mr. Gainforth further testified that he could likely lift around one hundred pounds if he did not have to walk with the item, but only around fifty pounds if he had to walk with the item. *Id.* at 50. Mr.

3

Gainforth added that he currently has no trouble sitting down. *Id.*

Mr. Gainforth also testified to his ability to care for himself and his young daughter when his girlfriend is not home. *Id.* at 39, 52-53. He washes dishes, cleans up around the house, washes clothes, and sweeps the floor. *Id.* at 52-53. Additionally, he makes himself lunch, lets his dogs outside and feeds them, and changes his daughter's diapers. *Id.* at 224. Mr. Gainforth stated that he goes outside every day by himself, and gets around either by walking or driving. *Id.* at 227. He drives on a regular basis, and usually drives to his friend's house to play video games and watch music videos. *Id.* at 41, 46.

After Mr. Gainforth's positive MRI and diagnosis of MS, he sought treatment from Dr. Anne Redding, M.D., at Neurology Specialists in Norfolk, Virginia, and remained in her care from at least September 2005 through June 2011. *Id.* at 291, 319-21. Dr. Redding is the physician who started Mr. Gainforth on Avonex, which he has been taking since April 27, 2006. *Id.* at 342.

Mr. Gainforth went to see Dr. Redding numerous times during the September through June 2011 time period. During his October 15, 2007 visit with Dr. Redding, Mr. Gainforth had not had any MS attacks since his previous visit, and Dr. Redding noted that Mr. Gainforth was "currently without much in the way of symptoms." *Id.* at 339. On an October 9, 2008 visit, Dr. Redding made no mention of MS attacks but did mention that Mr. Gainforth's eyesight in his left eye is worsening and that "[h]e trips easily and has had several falls." *Id.* at 338. In his September 14, 2009 visit, Dr. Redding noted that Mr. Gainforth "has not had any bad [MS] attacks, but his left leg gives out at times. His vision still is problematic. He has trouble with far and distant vision at times. He feels tired frequently." *Id.* at 336. Dr. Redding prescribed Mr. Gainforth Sinemet for his restless leg syndrome during this visit. *Id.* at 336-37. In his March 29,

4

2010 visit, Dr. Redding noted that the only thing that had changed from Mr. Gainforth's last visit was his weight, as he still has not had any MS attacks. *Id.* at 374.

Mr. Gainforth started attending Park Place Medical Center for treatment in April 2010. *Id.* at 284. He established care there, and was told to stop smoking both tobacco and marijuana. *Id.* at 285. Mr. Gainforth was then referred to Christopher Newell, M.D., in July 2010 by Park Place Medical Center. *Id.* at 277-82. Dr. Newell noted on July 20, 2010 that Mr. Gainforth was in a dysphoric mood, but that his "[t]hought processes are linear and logical. Good fund of knowledge. Follows directions. He is able to get on and off of the examination table without assistance." *Id.* at 278. Dr. Newell confirmed Mr. Gainforth's multiple sclerosis diagnosis with symptoms presently controlled, in addition to mechanical lower back pain. *Id.* at 279. Dr. Newell's functional assessment read as follows:

> The number of hours the claimant could stand and walk in an eight-hour workday, based on today's exam, is expected to be about four hours. The number of hours the claimant could sit in an eight-hour workday is about six hours. The amount of weight the claimant can lift/carry on a frequent basis is expected to be 10 pounds and on an occasional basis 20 pounds. He could bend, stoop and squat occasionally but not frequently. No manipulative limitations. No visual or communicative limitations. An assistive device is not medically necessary to ambulate.

*Id.* at 279-80.

Mr. Gainforth then returned to Park Place Medical Center for a follow up appointment on November 8, 2010. *Id.* at 283. Mr. Gainforth was dragging his left foot slightly, although there were no other complications with his knees or legs. *Id.* There was no other evidence before the ALJ of Mr. Gainforth returning to Park Place Medical Center.

Mr. Gainforth then returned to Dr. Redding's office on June 30, 2011. *Id.* at 319-21, 334-35. Dr. Redding noted that Mr. Gainforth had not had any MS attacks, but that his leg still gave

out at times. *Id.* at 319. Mr. Gainforth had avoided falling over from his leg giving out by catching himself. *Id.* Dr. Redding noted that Mr. Gainforth still drags his left foot slightly, and that his gait and tone testing was "remarkable." *Id.* at 320.

On July 21, 2011, Mr. Gainforth started seeing Dr. Rice. *Id.* at 300-03. Dr. Rice noted that Mr. Gainforth "seemed to be stable for the first few years but recently has been having what he thinks are frequent exacerbations. His memory is worse. He has periods of ataxia and fatigue. Some urinary urgency. Dizzy spells. He has not been able to work." *Id.* at 300. Dr. Rice wrote that Mr. Gainforth's balance was normal. *Id.* at 302. Mr. Gainforth denied having anxiety or depression to Dr. Rice, and he denied being "unable to cope with his daily activities." *Id.* at 301. Dr. Rice then ordered an MRI of Mr. Gainforth's brain to determine if there was any evidence of progression or of active lesions that warrant switching Mr. Gainforth to a different disease modifying agent. *Id.* at 303. Dr. Rice also noted that finances would be an issue because Mr. Gainforth had no health insurance. *Id.*

When Mr. Gainforth returned to see Dr. Rice on November 3, 2011, Dr. Rice informed him that the MRI evidenced a new contrast enhancing lesion. *Id.* at 298. Dr. Rice noted that Mr. Gainforth's girlfriend complained of additional cognitive problems, and he stated that "[h]e does appear to be a little worse clinically with a little more ataxia." *Id.* However, Dr. Rice also noted that Mr. Gainforth's attention span had not decreased, that his short-term memory was not impaired, and that his musculoskeletal and neurological examinations were unremarkable. *Id.*

Mr. Gainforth returned to see Dr. Rice about one month later, on December 6, 2011. *Id.* at 312-15. Dr. Rice informed Mr. Gainforth that he tested positive for JC Virus titer, but Mr. Gainforth was "adamant that he didn't want to consider Tysabri because of this." *Id.* Mr. Gainforth remained committed to staying on Avonex. *Id.* at 315. Dr. Rice noted that Mr.

Gainforth's symptoms were about the same, although he "is having a lot of dizziness and vertigo." *Id.* at 312. Dr. Rice then prescribed Prozac for Mr. Gainforth's depression. *Id.* at 315.

On August 13, 2012, Dr. Patricia Staehr, a state agency physician consultant, examined Mr. Gainforth's file. *Id.* at 96-100. Dr. Staehr noted that Mr. Gainforth "should be able to stand and walk 4 hours in an 8-hour workday and sit the normal amount of hours. He may have difficulties lifting over 20 pounds; however, he should be capable of limited-light work." *Id.* at 96.

Mr. Gainforth then returned to see Dr. Rice on March 4, 2013. *Id.* at 379-82. Dr. Rice noted that Mr. Gainforth had "[a] lot of problems. Fatigue. Blurring of vision in the left eye. Dizziness. Poor memory. Ataxia." *Id.* at 379. However, Dr. Rice further noted that Mr. Gainforth's short term memory was not impaired, that his attention span was not decreased, and that he had "an adequate fund of knowledge regarding current events." *Id.* at 381. Dr. Rice then referred Mr. Gainforth to ophthalmology and urology to "assess his poor vision and neurogenic bladder." *Id.* at 382. According to the records, this was Mr. Gainforth's last visit to Dr. Rice.

It was with this medical background that the ALJ conducted the hearing on November 20, 2013 and issued his decision on November 26, 2013. Mr. Gainforth then retained counsel, and subsequently provided the Appeals Council with additional medical information. That additional information reflected that on January 7, 2014, Dr. Rice completed a Multiple Sclerosis Residual Functional Capacity Questionnaire ("MS Questionnaire") regarding Mr. Gainforth. *Id.* at 408-13. From a list provided, Dr. Rice identified Mr. Gainforth's symptoms as fatigue, balance problems, poor coordination, weakness, unstable walking, numbness or tingling, sensory disturbance, difficulty remembering, difficulty solving problems, and double or blurred vision/partial or complete blindness. *Id.* at 408. He did not identify either "pain" or

7

"depression" as symptoms, which were on the list. *Id.* Dr. Rice answered "yes" to the question asking if his patient had "significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movement or gait and station." *Id.* at 409. He answered "yes" to the question asking if his patient had "significant reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination, resulting from neurological dysfunction in areas of the central nervous system  known to be pathologically involved by the multiple sclerosis process." *Id.* Dr. Rice explained his response by noting "walking long distances increases weakness in legs, poor balance." *Id.*

Dr. Rice could not provide any "approximate dates of exacerbations of [MS]," responding "unknown unless pt. calls" but indicated that "routine [follow-up] visits have shown progression of disease." *Id.* Dr. Rice responded "no" to the question asking if emotional factors contributed to the severity of his patient's symptoms, and "constantly" to the question asking how often his patient's symptoms interfered with his attention and concentration. *Id.* Dr. Rice indicated that Mr. Gainforth was incapable of working a "low stress" job because of "cognitive impairment, fatigue, pain, [and] depression." *Id.* at 409-10. Regarding sitting, standing, and walking, Dr. Rice noted that Mr. Gainforth could not walk a full city block without rest, could continuously sit for thirty minutes at a time, and could continuously stand for fifteen minutes at a time. *Id.* Dr. Rice answered that Mr. Gainforth could "sit/stand/walk" in total for less than two hours. *Id.*

Dr. Rice indicated that during a typical eight-hour work day, Mr. Gainforth would have to take a break every one to two hours for about ten minutes, and that he could never lift and carry any weight in a "competitive work situation." *Id.* at 411. Dr. Rice further answered "yes"

8

to the question asking if his patient would have "good days and bad days," and that as a result Mr. Gainforth would be absent from work "[m]ore than four times a month." *Id.* at 413.

On January 28, 2014 Mr. Gainforth's counsel sent Dr. Rice a letter asking him six questions in connection with the aforementioned questionnaire Dr. Rice completed, requesting he check the answer which applied to each question. *Id.* at 405-07. Dr. Rice responded on March 4, 2014, and checked the answers indicating that Mr. Gainforth's symptoms were present on or before December 31, 2011, that he "had a medically determinable impairment that is severe on or before December 31, 2011," and that the severe impairment "has, or can be expected to, last for twelve months or more." *Id.* at 405-06. Dr. Rice also checked the answers indicating that Mr. Gainforth's "diagnosis of multiple sclerosis and depression" resulted in "marked restriction of activities of daily living," and "marked difficulties" in "social functioning" and "maintaining concentration, persistence or pace or repeated episode [sic] of decompensation," all of which existed on or before December 31, 2011. *Id.* at 406.

### III. THE ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

A sequential evaluation of a claimant's work and medical history is required in order to determine if the claimant is eligible for benefits. 20 C.F.R. §§ 404.1520, 416.920; *Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001). The ALJ conducts a five-step sequential analysis for the Acting Commissioner, and it is this process that the Court examines on judicial review to determine whether the correct legal standards were applied and whether the resulting final decision of the Acting Commissioner is supported by substantial evidence in the record. *Id.* The ALJ must determine if "(1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App.

1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment." *Strong v. Astrue*, No. 8:10-cv-357-CMC-JDA, 2011 WL 2938084, at *3 (D.S.C. June 27, 2011) (citing 20 C.F.R. §§ 404.1520, 416.920); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (noting that substantial gainful activity is "work activity performed for pay or profit."); *Underwood v. Ribicoff*, 298 F.2d 850, 851 (4th Cir. 1962) (noting that there are four elements of proof to make a finding of whether a claimant is able to engage in substantial gainful activity). "An affirmative answer to question one, or negative answers to questions two or four, result in a determination of no disability. Affirmative answers to questions three or five establish disability." *Jackson v. Colvin*, No. 2:13cv357, 2014 WL 2859149, at *10 (E.D. Va. June 23, 2014) (citing 20 C.F.R. § 404.1520).

Under this five-step sequential analysis, the ALJ made the following findings of fact and conclusions of law. First, Mr. Gainforth has not engaged in substantial gainful activity since August 15, 2009, which is the alleged onset date of disability. R. 19. The ALJ explained that Mr. Gainforth had told him that he had worked since August 15, 2009, but that this work was performed "under the table," was not listed in his earnings record, and was not reported to the Internal Revenue Service so that he could pay taxes on these earnings. *Id.* The ALJ explained that this failure to pay taxes brings Mr. Gainforth's credibility into question. *Id.* Second, the ALJ determined that Mr. Gainforth has severe impairments in multiple sclerosis and depression. *Id.* The ALJ explained that these impairments are severe because they limit Mr. Gainforth's ability to perform "basic work activities." *Id.* at 20.

Third, the ALJ determined that Mr. Gainforth "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed

impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* The ALJ made this finding by concluding that Mr. Gainforth's impairments do not result in at least two of the following: "marked restrictions of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration." *Id.* at 20. The ALJ concluded that Mr. Gainforth has only mild difficulties with activities of daily living and social functioning, and only moderate difficulties regarding concentration, persistence, and pace. *Id.* Additionally, the ALJ concluded that Mr. Gainforth "does not exhibit a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause [Mr. Gainforth] to decompensate." *Id.* at 21. The ALJ then noted that Mr. Gainforth lacks a history of "one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement." *Id.*

Fourth, the ALJ found that Mr. Gainforth possesses the residual functional capacity ("RFC") necessary to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) subject to the following limitations: he can only occasionally perform postural activity, and he "requires an opportunity to alternate between sitting and standing;" he must avoid climbing and he must avoid exposure to heights or hazards; and due to the effect of MS on his cognition, "[h]e is limited to performing only simple, routine repetitive tasks due to limitations in concentration, persistence, or pace." *Id.* The ALJ then concluded that despite Mr. Gainforth's medical impairments and symptoms, his statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." *Id.* at 22. The ALJ found that despite Mr. Gainforth's complaints, he only received conservative care, refused to switch medication when

advised by his doctor, and had unremarkable medical examinations in November 2011, December 2011, and fifteen months later in March 2013. *Id.* at 22-23. The ALJ then found that activities of daily living were not limited in proportion to the level of symptoms and limitations that to the extent Mr. Gainforth complained. *Id.* at 23. The ALJ also noted that Mr. Gainforth's sporadic work history before his alleged disability onset date raises a question of whether he is unemployed due to medical impairments. *Id.* The ALJ further noted that "no physician has established any work preclusive functional limitations based on his symptoms." *Id.* The ALJ noted that Mr. Gainforth had no past relevant work and, because he had no past relevant work, transferability of job skills was not an issue when determining what work Mr. Gainforth could perform. *Id.* at 24.

Fifth, the ALJ found that, considering Mr. Gainforth's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Mr. Gainforth could perform, including cashier, sorter, surveillance system monitor, and inspector of electronics. *Id.* at 24-25. Thus, the ALJ determined that Mr. Gainforth was not disabled as defined by the Social Security Act at any time from August 15, 2009, the alleged onset date, through November 26, 2013, the date of the ALJ's decision. *Id.* at 25.

## IV. THE APPLEALS COUNCIL'S ACTION

Following the ALJ's issuance of his unfavorable decision, counsel for Mr. Gainforth submitted a request for review of the decision on January 18, 2014. R. 12. In support of the request, counsel submitted the Multiple Sclerosis Residual Functional Capacity Questionnaire completed by Dr. Rice, along with Dr. Rice's March 4, 2014 response to the counsel's clarification questionnaire ("the post-hearing submission"). ECF No. 13 attach. 1. The Appeals Council denied the request for review by Notice issued March 17, 2015. R. 1-4. In the Notice,

the Appeals Council advised Mr. Gainforth: "We found no reason under our rules to review the Administrative Law Judge's decision. Therefore, we have denied your request for review." *Id.* at 1. Further, the Appeals Council stated that, although they "looked at" the post-hearing submission, they advised that "[t]his new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before November 26, 2013." *Id.* at 2.

## V. STANDARD OF REVIEW

Under the Social Security Act, the Court's review of the Acting Commissioner's final decision is limited to determining whether the decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

In determining whether the Acting Commissioner's decision is supported by substantial evidence, the Court does not "re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [Commissioner]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for the decision falls on the [Commissioner] (or the [Commissioner's] delegate, the ALJ)." *Id.* (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). Accordingly, if the Acting Commissioner's denial of benefits is supported by substantial evidence and applies the correct legal standard, the Court must affirm the Commissioner's final decision. *Hays*, 907 F.2d at 1456.

13

## VI.  ANALYSIS

Mr. Gainforth argued that the Appeals Council erred in rejecting evidence of Dr. Rice's medical opinions (the "post-hearing submission or evidence"), and asserted that the Appeals Council's reasoning—that the evidence was not relevant as to whether Mr. Gainforth became disabled prior to his DLI of December 31, 2011—was "wrong," and therefore a remand is necessary. ECF No. 13 at 5 ("[I]n Mr. Gainforth's case the Appeals Council gave the wrong reasons for rejecting and discarding medical source opinion evidence."). Mr. Gainforth contended that the Appeals Council was mistaken when it stated that the post-hearing submission constituted new information arising after the hearing, since Dr. Rice specifically opined that Mr. Gainforth's symptoms and impairments dated back to on or before December 31, 2011, well before the hearing, and therefore it rejected this evidence for the wrong reason. *Id.* Relying on *Meyer v. Astrue*, 662 F.3d 700 (4th Cir. 2011), Mr. Gainforth argued that, while the Appeals Council could have chosen to reject the post-hearing submission if it found it was not supported by substantial evidence in the record, it could not reject such evidence for the wrong reason. *Id.* The Commissioner argued in response that the Appeals Council's reasoning was irrelevant, as the Appeals Council simply denied Mr. Gainforth's request for review, meaning this Court is left only to determine if there remains substantial evidence in the record to support the ALJ's finding. ECF No. 17 at 15. Mr. Gainforth misconstrues both the decision being reviewed by this Court and the application of *Meyer*. After reviewing the record as a whole, the undersigned concludes that remand is not appropriate.

Section 405(g) of the Social Security Act states in pertinent part that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without

remanding the cause for rehearing." 42 U.S.C. § 405(g) (also known as a "sentence four remand," as it refers to the Court's ability to remand the decision based on the fourth sentence of § 405(g)). If evidence is brought before the Appeals Council that was not before the ALJ, then a remand is required when "the additional evidence is 'conflicting,' or presents 'material competing testimony,' *Riley* [*v. Apfel*], 88 F. Supp. 2d [572,] 580 n.14 [(W.D. Va. Mar. 16, 2000)]; is 'contradictory,' *Smallwood v. Barnhart,* No. 7:03cv00749, slip op. at 3-4 (W.D. Va. Oct. 19, 2004); or 'calls into doubt any decision grounded in the prior medical reports.' *Ridings* [*v. Apfel*], 76 F. Supp. 2d [707,] 710 [(W.D. Va. Nov. 16, 1999)]." *Lavigne ex rel. F.L. v. Barnhart,* 2006 WL 318610 at *9 (W.D. Va. Feb. 8, 2006). If the case is to be remanded pursuant to sentence four of § 405(g), it must be accompanied by a judgment affirming, modifying, or reversing the Commissioner's decision. *Melkonyan v. Sullivan,* 501 U.S. 89, 99 (1991). Additionally, "a sentence four remand 'terminates the civil action' seeking judicial review of the final decision," and thus it "constitutes a final judgment under 28 U.S.C. § 2412(d)." *Hines v. Comm'r of Soc. Sec.,* 450 F. Supp. 2d 628, 620 (E.D. Va. Oct. 3, 2006) (quoting *Shalala v. Schaefer,* 509 U.S. 292, 299 (1993)).

Cited by both Mr. Gainforth and the Commissioner in their briefs, the Fourth Circuit's decision in *Meyer* shares numerous parallels with the instant case. In *Meyer,* the claimant fell twenty-five feet out of a deer stand and suffered serious injuries to his spine, left wrist, and left shoulder, requiring multiple surgeries including spinal reconstructive surgery. *Id.* at 702. The claimant filed a claim for social security disability benefits, but it was denied by the ALJ, who noted that there was a lack of restrictions placed on the claimant by any physician that would support the claimant's assertions of totally disabling symptoms. *Id.* at 702-03. The claimant then appealed the ALJ's decision to the Appeals Council, bringing forth additional evidence that

was not before the ALJ. *Id.* at 703. This additional evidence came in the form of an opinion letter from the claimant's treating physician, who, for the first time, recommended long-term restrictions on lifting more than ten pounds, bending, stooping, squatting, and sitting, standing, or walking for more than thirty minutes. *Id.* The Appeals Council summarily denied the claimant's request for review, including the additional evidence in the record, but noted that the additional evidence "d[id] not provide a basis for changing the [ALJ]'s decision." *Id.* at 704.

On appeal to the Fourth Circuit, the *Meyers* claimant argued that the Appeals Council erred when it summarily denied review and failed to articulate specific findings justifying denial of review. *Id.* at 702. The Fourth Circuit disagreed with the claimant, holding that the Appeals Council need not explain its reasoning when denying review of an ALJ decision on the basis that, even considering the new evidence that was not before the ALJ, the ALJ's decision is supported by substantial evidence in the record. *Id.* But, when an Appeals Council grants a claimant's request for review, then the Appeals council must either remand the case to the ALJ or issue its own decision on the merits, whereby it would articulate and explain its specific findings. *Id.* at 705. The Fourth Circuit remanded the claim anyway because, upon reviewing the additional evidence, the court could not determine whether substantial evidence supported the denial of benefits. *Id.*

Thus, when new evidence is proffered before the Appeals Council, the Appeals Council first evaluates the new evidence, asking whether the evidence is "new and material" and whether it "relates back to the period on or before the date of the ALJ's hearing decision." *Id.* at 705 (citing 20 C.F.R. §§ 404.968, and 404.970(b)). If the Appeals Council finds the evidence qualifies, it includes the evidence in the record in order to review the record as a whole. *Id.* The Appeals Council then "evaluates the entire record including the new and material evidence" to

16

determine whether the ALJ's findings are supported by the weight of the evidence of record. *Id.* (citing 20 C.F.R. § 404.970(b)). From here, there are three general outcomes in which the Appeals Council can proceed:

The Appeals Council can find the ALJ's decision was *contrary* to the weight of the evidence, and grant a claimant's request for review. *Id.* at 705. Once granted, the Appeals Council will either (1) issue its own decision on the merits, or (2) remand the claim to the ALJ with instructions for fixing any error the ALJ included. *Id.* If issuing its own decision on the merits, the Appeals Council is required to articulate its findings of fact and explain its reasoning. *Id.* at 705-06 (citing 20 C.F.R. §§ 404.979, 404.1527(f)(3)). Or, third, the Appeals Council can find that the ALJ's decision was *not contrary* to the weight of the evidence, even considering the new evidence that was not before the ALJ. *Id.* Upon this finding, the Appeals Council can (3) deny the claimant's request for review with no obligation to articulate its findings or explain its reasoning. *Id.*; *see also Freeman v. Halter*, 15 F. App'x 87, 89 (4th Cir. 2001) ("[T]he regulation addressing additional evidence does not direct that the Appeals Council announce detailed reasons for finding additional evidence insufficient to change the ALJ's decision").

In the instant case, the Appeals Council denied review after considering the additional evidence that Mr. Gainforth provided to the Appeals Council. R. 2. The Appeals Council stated that the additional evidence "does not provide a basis for changing the Administrative Law Judge's decision." *Id.* Mr. Gainforth's argument that the Appeals Council erred by disregarding Dr. Rice's opinion for "the wrong reason" is essentially irrelevant as it is not determinative of the overall consideration—whether substantial evidence in the record supports the ALJ's decision. The Appeals Council need only *consider* new evidence when determining whether to grant review—not make specific findings of fact when review is denied. Specifically citing *Sec. &*

*Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194 (1947), Mr. Gainforth argued that this Court cannot consider the substantial evidence question since the Appeals Council gave "the wrong reason" for denying review, and based on the *Chenery* doctrine, the Court may not affirm an administrative determination on a basis not articulated by the Commissioner. ECF No. 18 at 2. But Mr. Gainforth is wrong in his understanding of the roles played at each level of review. The Court here is not evaluating the Appeals Council's *denial of review*, or indeed, any action taken by the Appeals Council; as noted above, if the Appeals Council denies review, the decision of the Commissioner (the ALJ) becomes the final decision, which was articulated. Hence, this Court's role in this case is to evaluate the decision of the ALJ because the Appeals Council denied review. *Meyer*, 662 F.3d at 705 (explaining that an Appeals Council's denial of review is not a decision of the Commissioner requiring findings of fact and reasons for the decision).

This Court, as the Court did in *Meyer*, can consider the post-hearing submission to determine whether this additional information affects the evaluation of whether the Commissioner's decision is supported by substantial evidence. As the Fourth Circuit noted in *Meyer*:

> Of course, the lack of such additional fact finding does not render judicial review "impossible" – as long as the record provides "an adequate explanation of [the Commissioner's] decision. Thus, we have affirmed an ALJ's denial of benefits after reviewing new evidence presented to the Appeals Council because we concluded that "substantial evidence support[ed] the ALJ's findings. *Smith v, Chater*, 99 F.3d 635, 638-39 (4th Cir. 1996). Conversely, when consideration of the record as a whole revealed that new evidence from a treating physician was not controverted by other evidence in the record, we have reversed the ALJ's decision and held that the ALJ's denial of benefits was "not supported by substantial evidence." *Wilkins*, 953 F.2d at 96. *Wilkins[ v. Sec'y, Dep't of Health & Human Servs.]*, 953 F.2d [93,] 96 [(4th Cir.1991)].

*Id.* at 707. The *Meyer* court went on to determine that the evidence in that case was not as one-sided as in *Smith* or *Wilkins*, and that it could not determine, once the new evidence was

considered, whether substantial evidence supported the ALJ's denial of benefits. *Id.* Consequently, it ordered remand on that basis. *Id.* Here, the Court may similarly consider the new evidence and evaluate whether, taking that new evidence into consideration, there is substantial evidence to support the ALJ's decision.

After considering the evidence of record, which includes the post-hearing submission, this Court finds that a sentence four remand would be improper because, just as the Court found in *Smith, supra*, despite the opinions contained in the post-hearing submission, substantial evidence supports the ALJ's decision that Mr. Gainforth is not disabled. Mr. Gainforth was diagnosed with MS in 2004 due to blurred vision in his left eye. *Id.* at 277. However, the record shows that Dr. Redding prescribed Avonex in 2006 and Mr. Gainforth has been stable on this medicine for a while. *Id.* at 342; 339 (noting in 2007 that Mr. Gainforth had not had any MS attacks in a while and was "currently without much in the way of symptoms"), 338 (mentioning in 2008 that he had no MS attacks but stating he trips and falls easily), 226 (stating in 2009 that that he had not had any bad MS attacks but his vision and left leg caused some problems but the leg could be treated with a prescription of Sinemet), 374 (noting in 2010 that he still had not had any MS attacks); 319 (stating in 2011 he still had not had any MS attacks but his leg gave out at times). Beyond having an ataxic gait and dragging in his left foot, Mr. Gainforth appeared to have no other complications with his legs or knees. *Id.* at 283 (indicating no complications in his knees or legs); 320 (finding his gait and tone testing was "remarkable") Additionally, Mr. Gainforth testified that he could carry up to fifty pounds, stand normally for an hour without having to sit down, and sit down without issue for lengths of time. *Id.* at 50-51. His MS appears to cause only mild limitations on his daily activities, as he is able to care for himself and his young daughter, including washing dishes and clothes, general cleaning,

cooking, changing diapers, feeding his dogs, going outside, playing video games, and driving. *Id.* at 41, 46, 52-53, 224, and 227. Mentally, Mr. Gainforth appeared to exhibit no limitations. His thought processes were generally linear and logical and was able to recall current events. *Id.* at 278. Accordingly, the weight of the objective and subjective evidence supports the ALJ's determination that Mr. Gainforth's MS does not appear to limit his ability to perform basic work activities.

Mr. Gainforth's post-hearing submission does not alter this conclusion. First, Dr. Rice's responses to the MS Questionnaire merely offered conclusions based on evidence that was before the ALJ, and did not include any new information, such as subsequent treatment, testing or examination results. Dr. Rice merely agreed with opinions that Mr. Gainforth's counsel conjectured, suggesting that Mr. Gainforth was incapable of performing any work. The evidence did not necessarily conflict, compete, or contradict the evidence that was before the ALJ, *i.e.* it did not raise any new questions as to his limitations on review. The new evidence simply lists the same symptoms present in the record before the ALJ, but displays a different overall opinion of what Mr. Gainforth is capable of given his MS diagnosis.

Oddly, Dr. Rice's assessment of Mr. Gainforth's abilities is quite different from Mr. Gainforth's own assessment: On November 20, 2013, Mr. Gainforth testified that he could lift a one hundred-pound item, but if he had to walk with the item, he could carry only a fifty-pound item. R. 50. He testified that he could stand an "hour or so" and walk "[a]round four sides of a block." *Id.* at 51-52. Contrarily, on January 7, 2014, less than seven weeks later and without seeing the patient, Dr. Rice stated that Mr. Gainforth could "[n]ever" lift or carry any weight in a competitive work situation. *Id.* at 412. Mr. Gainforth could walk zero city blocks and could stand continuously at one time for only fifteen minutes. *Id.* at 410. Moreover, Dr. Rice's

opinion contradicts itself in many ways: Dr. Rice failed to select depression and pain when identifying Mr. Gainforth's symptoms, *id.* at 408, but then indicated that Mr. Gainforth was incapable of working a low stress job because of cognitive impairment, fatigue, pain, and depression. *Id.* at 409-10. Dr. Rice stated that he does not know to what extent Mr. Gainforth has MS exacerbations and which, if any, would prevent Mr. Gainforth from working for more than one month. *Id.* at 409. On the other hand, Dr. Rice later stated that Mr. Gainforth would be absent from work more than four times per month because of "bad days." *Id.* at 413.

Nonetheless, even though Dr. Rice's opinion was not before the ALJ, Dr. Rice's indication of Mr. Gainforth's symptoms was substantially the same as the symptoms the ALJ considered. Compare the post-hearing submission of Dr. Rice's answers in the MS Questionnaire, *id.* at 408 (checking and circling symptoms: Fatigue, balance problems, poor coordination, weakness, unstable walking, numbness and tingling, sensory disturbance, difficulty remembering, difficulty solving problems, and blurred vision or blindness), with the ALJ's opinion, *id.* at 20-24 (noting mild difficulties in social functioning, moderate difficulties in concentration, persistence, or pace, dragging of the left foot, weakness in the legs, abnormal dexterity, ataxic gait, and depression). Therefore, a sentence four remand is improper in the instant case due to the fact that the additional post-hearing evidence neither raises any new questions on review nor does it contradict the medical evidence that was before the ALJ.

Mr. Gainforth next argued that his case should be remanded to the ALJ because the evidence of Dr. Rice's medical opinion meets the requirements of sentence six of 42 U.S.C. § 405(g) and therefore a remand is necessary. ECF No. 13 at 6. The Commissioner argued in response that a sentence six remand would be inappropriate on the grounds that the evidence was not new because it was considered at the administrative level by the Appeals Council and was

not material because the Appeals Council found that Dr. Rice's opinion would not provide a basis for altering the ALJ's decision. ECF No. 17 at 15.

> Section 405(g) of the Social Security Act states in pertinent part:

> The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]

42 U.S.C. § 405(g) (also known as a "sentence six remand," as it refers to the Court's ability to remand the decision based on the sixth sentence of § 405(g)). The Fourth Circuit explained the sentence six remand standard in *Borders v. Heckler*, generally reasoning that a reviewing court may remand a case on the basis of newly discovered evidence if four prerequisites are met: (1) the evidence must be relevant to the determination of disability at the time the application was first filed and not be merely cumulative; (2) the evidence must be material; (3) there must be good cause for failure to submit the evidence before the Commissioner; and (4) the claimant must present to the remanding court a general showing of the nature of the new evidence. 777 F.2d 954, 955 (4th Cir. 1985).

Turning to Mr. Gainforth's claim, the Court finds that his argument for a remand under sentence six is unpersuasive for several reasons. First, while Dr. Rice indicated that Mr. Gainforth's symptoms were present on or before December 31, 2011, such evidence is cumulative of the evidence already in the record, as noted *supra*. The MS Questionnaire reflects no new symptoms, but merely asserts a different opinion on the effect of those symptoms on Mr. Gainforth's ability to work. *See Pallett v. Astrue*, No. 3:09CV819, 2010 WL 2696283, at *6 (E.D. Va. May 27, 2010) *report and recommendation adopted*, No. 3:09-CV-819, 2010 WL

2696653 (E.D. Va. July 7, 2010) (finding the evidence cumulative because "the physicians' opinions are based upon the same objective evidence already considered by the ALJ"). Second, the evidence is also immaterial, as the underlying facts and symptoms that Dr. Rice reports "merely agreed with substantive evidence already before the ALJ." *Ahnen v. Colvin*, No. 3:14CV098 JRS, 2015 WL 868107, at \*18 (E.D. Va. Feb. 27, 2015); *Bagbey v. Colvin*, No. 3:13CV298-HEH, 2014 WL 791871, at \*10 (E.D. Va. Feb. 24, 2014) ("New evidence must be material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him."). Third, Mr. Gainforth has not demonstrated "good cause" as to why he failed to submit Dr. Rice's opinion for the ALJ to consider. Dr. Rice began evaluating Mr. Gainforth in July of 2011, and last saw him on March 4, 2013. R. 300-03, 379-82. The hearing before the ALJ took place on November 20, 2013, *id.* at 31, and the ALJ issued his decision on November 26, 2013, *id.* at 26. Since Dr. Rice last saw Mr. Gainforth in March 2013, and in his questionnaire response indicated that Mr. Gainforth's symptoms were present on or before December of 2011 and affected his ability to work, Mr. Gainforth could have included such letter in the record before the ALJ in November. *See Parker v. Colvin*, No. 3:14CV502, 2015 WL 5793695, at \*25 (E.D. Va. Sept. 29, 2015) ("There is good cause for Plaintiff's failure to submit the evidence earlier simply because Dr. Bloem saw Plaintiff, examined her MRIs and completed a Multiple Impairment Questionnaire after the ALJ's decision."); *Gadbois v. Colvin*, No. 2:15-CV-107, 2015 WL 10323034, at \*10 (E.D. Va. Dec. 28, 2015), *report and recommendation adopted*, No. 2:15CV107, 2016 WL 715724 (E.D. Va. Feb. 17, 2016) (finding no good cause shown where the claimant could have submit her doctor's opinion to the ALJ because the doctor began treating the claimant over a year prior to the ALJ's hearing). Accordingly, because the evidence is cumulative and immaterial, and no good cause exists for

23

Mr. Gainforth's failure to present it to the ALJ before the November 20, 2013 hearing, a remand pursuant to sentence six of 42 U.S.C. § 405(g) is improper. *Borders*, 777 F.2d 955.

## VII.  RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** that Mr. Gainforth's Motion for Summary Judgment, ECF No. 12, be **DENIED**; the Commissioner's Motion for Summary Judgment, ECF No. 16, be **GRANTED**; the final decision of the Acting Commissioner be **AFFIRMED**, and that this matter be **DISMISSED WITH PREJUDICE**.

## VIII.  REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1.  Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a) plus three days permitted by Federal Rule of Civil Procedure Rule 6(d).  A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

2.  A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made.  The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to all counsel of record.

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
May 9, 2016